**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| **THERESE EZERSKI** | ) | |
| | ) | **No. 3:17-cv-00069-WHR** |
| ***Plaintiff*** | ) | |
| | ) | **Judge Walter H. Rice** |
| ***v.*** | ) | **Magistrate Judge Michael R. Merz** |
| | ) | |
| **KIRLINS, INC. LONG-TERM DISABILITY** | ) | |
| **PLAN, and NORTHWESTERN MUTUAL** | ) | |
| **LIFE INSURANCE COMPANY** | ) | |
| | ) | |
| ***Defendants*** | ) | |

**NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY'S**

**MEMORANDUM IN SUPPORT OF ITS MOTION FOR JUDGMENT**

**ON THE ADMINISTRATIVE RECORD**

Warren von Schleicher (IL – 6197189)
SMITH | VON SCHLEICHER + ASSOCIATES
180 North LaSalle St. Suite 3130
Chicago, Illinois 60601
P 312.541.0300 | F 312.541.0933
warren.vonschleicher@svs-law.com

## TABLE OF CONTENTS

Introduction....1

Statement of Facts....3

Argument....16

I. *De Novo* Standard Of Judicial Review....16

II. Northwestern Correctly Determined That Ezerski Failed to Prove She Was Disabled From All Occupations....17

Conclusion....20

## INTRODUCTION

Plaintiff Therese Ezerski ("Ezerski") worked as a Hallmark card and gift store manager for Kirlin's Inc. As a benefit of employment, she received long-term disability insurance coverage under a Group Policy issued to Kirlin's by Northwestern Mutual Life Insurance Company ("Northwestern") and governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001 *et seq.* ("ERISA"). To qualify for disability benefits during the initial 24-month period, the participant must be Disabled from working in her Own Occupation. To obtain benefits beyond 24 months, however, the participant must be Disabled from working in Any Occupation.

Ezerski ceased working for Kirlin's on March 25, 2013, when she claimed to be disabled due to pain in her neck, back, legs, and arms. She subsequently was diagnosed with cervical radiculopathy, which was successfully surgically repaired in December 2014. As a Hallmark store manager, Ezerski supervised her retail store's daily operations, including servicing customers, stocking merchandise, hiring and firing store employees, and managing bank deposits, a job she described as "very stressful" and "physical." Although she could perform sedentary work, she was unable to perform the "light level" physical demands of her occupation as a retail store manager. Northwestern, therefore, approved her disability claim and paid benefits for 24 months, through June 22, 2015, pursuant to the Group Policy's Own Occupation Definition of Disability.

After recovering from her successful cervical surgery, Ezerski's condition improved. By June 2015, all her treating physicians concurred that she had normal range of motion in her back and neck, normal strength in her arms and legs, she walked with a normal gait, and she was cleared to lift up to 50 pounds and return to her normal activities in the community. No

physician found on clinical examination any functional restrictions or limitations that would prevent Ezerski from performing sedentary level work. Northwestern, therefore, correctly determined that she failed to qualify for benefits after June 22, 2015 under the Any Occupation Definition of Disability.

After learning of Northwestern's determination, Ezerski claimed to have extreme debilitating symptoms, including the inability to move her head, walk, sit, or stand. Her attorney retained a physical therapist who performed a Functional Capacity Evaluation ("FCE") that concluded Ezerski was "extremely debilitated" from any type of work. According to the FCE, Ezerski had severe loss of range of motion in her neck and back, and she could barely walk, use stairs, handle objects, or lift 1 pound. The physical therapist who performed the FCE, however, explicitly acknowledged that Ezerski's test performance was internally inconsistent and she displayed unusual behaviors and overreaction.

But the contemporaneous clinical findings of Ezerski's treating physicians directly refute the extreme limitations listed in the FCE. Just four days before the FCE, Ezerski's neurosurgeon performed a thorough clinical exam and concluded she had full strength in her arms and legs, full range of motion of her neck and back, and normal gait. A second physician, her regular family physician, examined her five days before the FCE and concurred that she had normal strength, full range of motion, and no debilitating limitations. A third physician, a physiatrist, examined her less than two weeks before the FCE and reported she had full strength, normal reflexes, normal gait, and no evidence of radiculopathy.

Northwestern consulted two board certified physicians who concluded, consistent with all of Ezerski's treating physicians, that she had no functional limitations that would prevent her from performing sedentary work. Northwestern consulted a vocational specialist who identified

numerous sedentary occupations that Ezerski had the education, training, and functional capacity to perform. Northwestern's determination that Ezerski failed to satisfy the Any Occupation Definition of Disability is supported by the clinical findings of Ezerski's treating physicians, the medical opinions of two independent consulting physicians, and evidence that Ezerski's performance on the FCE was inconsistent, exaggerated, and unreliable. Northwestern's determination should be upheld under the Court's *de novo* review.

## STATEMENT OF FACTS

### Applicable Provisions of the Group Policy

The Group Policy's Own Occupation Definition of Disability provides, "You are Disabled from your Own Occupation if, as a result of Sickness, Injury, or Pregnancy, you are unable to perform with reasonable continuity the Material Duties of your Own Occupation." After benefits have been paid for 24 months the participant must prove she is disabled from "all occupations" pursuant to the Any Occupation Definition of Disability:

> You are Disabled from all occupations if, as a result of Sickness, Injury, or Pregnancy, you are unable to perform with reasonable continuity the Material Duties of any gainful occupation for which you are reasonably fitted by education, training, and experience.

(Doc. No. 40-1, PageID 526).[1] Material Duties are "the essential tasks, functions and operations and the skills, abilities, knowledge, training and experience generally required by employers from those engaged in a particular occupation." (Doc. No. 40-1, PageID 527).

### Northwestern Approves Ezerski's Claim Under the Own Occupation Definition of Disability

When Ezerski ceased working at Kirlin's on March 23, 2013, she claimed to be disabled from her light level job as a Hallmark store manager due to "arthritis, nerve problems in legs and

[1] Citations to Doc. Nos. 40-1 through 40-5 are to Parts I through V of the Administrative Record filed on July 10, 2017.

feet … degenerative spinal condition & arthritis in my knees & carpal tunnel in arms." She claimed her job was "very stressful" and "physical" and that she could not "stand, bend, climb, walk, and count money." (Doc. No. 40-3 PageID 1103-05). To support her disability claim, she submitted an Attending Physician Statement signed by her pain management physician, Jeffrey Rogers, D.O., on June 20, 2013. Dr. Rogers described her symptoms as back and leg pain, and her functional limitations as "unable to stand for any duration, no climbing, lifting, pulling, pushing, no twisting, bend[ing], crawling or stooping." (Doc. No. 40-2, PageID 927-28).

Dr. Rogers anticipated that Ezerski could return to work full-time within a few weeks, by July 1, 2013. But Ezerski began to complain of new symptoms of neck and back pain. (Doc. No. 40-2, PageID 868). Dr. Rogers commented during his August 7, 2013 exam that Ezerski "does not seem aggressive in wanting to get better." (Doc. No. 40-2, PageID 868). Ezerski did not seek treatment from Dr. Rogers after December 2013. On November 19, 2013, Northwestern received a call from Kirlin's explaining that they may terminate Ezerski's employment because "she told the district manager that she is likely never returning to work." (Doc. No. 40-3, PageID 1075).

On April 3, 2014, Ezerski began seeing family physician Christopher Lauricella, D.O., as a new patient, complaining of neck pain, back pain, and depression. (Doc. No. 40-2, PageID 814-15). At the initial exam, Ezerski requested that Dr. Lauricella complete a Medical Questionnaire for her disability claim. On the Medical Questionnaire, Dr. Lauricella stated that during an 8-hour workday, Ezerski could lift, push and pull up to 20 pounds "occasionally" (up to 1/3rd of the day), sit for 2 hours, stand for 2 hours, and walk for 2 hours. He noted that her condition was expected to improve in six to eight months. (Doc. No. 40-2, PageID 850-51). Dr. Lauricella referred Ezerski to neurosurgeon Michael Verdon, M.D. for further evaluation.

On June 17, 2014, Dr. Verdon obtained a cervical CT and myelogram, which depicted a bone spur at the C4-5 level and a disc protrusion at the C5-6 level with "moderate compression of the ventral surface of the cord." (Doc. No. 40-2, PageID 781, 786). Based on the radiographic images, Dr. Verdon diagnosed Ezerski with cervical radiculopathy, a condition characterized by physical compression of the spinal nerve typically caused by a herniated disc or protruding bone.[2] (Doc. No. 40-1, PageID 715; Doc. No. 40-2, PageID 786). Dr. Verdon recommended a cervical fusion at the C4-C7 level, which he successfully performed without any complications on December 15, 2014. (Doc. No. 40-1, PageID 697).

To evaluate Ezerski's claim under the Own Occupation Definition of Disability, Northwestern consulted a vocational specialist, who determined that Ezerski's Own Occupation was a Retail Store Manager, which is classified as a "light-level" occupation requiring lifting or carrying up to 20 lbs. and significant standing, walking, pushing and pulling. (Doc. No. 40-3, PageID 1125).

Northwestern consulted Mark Shih, M.D., a physician board certified in physical medicine and rehabilitation, who evaluated Ezerski's medical records and stated his medical assessment in two Physician Consultant Reports dated September 4, 2013 and October 17, 2014. Dr. Shih concluded that Ezerski's medical condition "would reasonably preclude light-level work activities." (Doc. No. 40-2, PageID 791). Notably, Dr. Shih opined that Ezerski would be able to perform sedentary level work activities, including "10 pounds occasional level of lifting, carrying, pushing and pulling consistent with [the] medical questionnaire filled out by Dr.

---

[2] "Cervical radiculopathy is a disease process marked by nerve compression from herniated disk material or arthritic bone spurs." Eubanks J., *Cervical Radiculopathy: Nonoperative Management of Neck Pain and Radicular Symptoms*, AM. FAM. PHYSICIAN, No. 1;81(1):33-40 (2010) (cited by https://www.physio-pedia.com/Cervical_Radiculopathy).

Lauricella and for changing position between sitting and standing on an as needed basis throughout her work day." (Doc. No. 40-2, PageID 791). Dr. Shih anticipated that Ezerski's medical condition may improve after the cervical fusion procedure. (Doc. No. 40-2, PageID 791; Doc. No. 40-1, PageID 697).

Because Ezerski's Own Occupation as a Retail Store Manager required light-level strength, Northwestern approved Ezerski's disability claim on September 13, 2013. Northwestern paid benefits for the maximum 24-month Own Occupation period, from June 23, 2013 through June 22, 2015. (Doc. No. 40-3, PageID 1079).

**Northwestern's Determination of Ezerski's Claim under the Any Occupation Definition of Disability**

Shortly before the end of the 24-month Own Occupation Period, Northwestern evaluated whether Ezerski's condition prevented her from working in "all occupations." Northwestern obtained a Transferable Skills Assessment prepared by vocational consultant Josephine de Oliveira on November 3, 2014. (Doc. No. 40-3, PageID 1107-14). Ms. de Oliveira identified multiple sedentary level occupations that Ezerski had the transferable skills and functional capacity to perform, including Customer Service Representative, Appointment Clerk, and Receptionist, based on the functional capacities listed in Dr. Lauricella's Medical Questionnaire and Dr. Shih's Reports. (Doc. No. 40-3, PageID 1111-14).

Northwestern obtained updated medical records from Drs. Verdon and Lauricella charting Ezerski's recovery from the December 14, 2014 cervical fusion. Specifically, Dr. Verdon performed a post-surgical examination of Ezerski on January 9, 2015 and noted she had full strength ("5/5") in all extremities, normal motor coordination, normal muscle tone, intact sensation, and normal reflexes. Dr. Verdon instructed Ezerski to wear a protective cervical collar, and cleared her to lift up to 25 pounds. (Doc. No. 40-1, PageID 687, 632-33).

Dr. Verdon performed a follow-up exam on January 29, 2015, during which Ezerski reported only "some cervical pain with discomfort on the right side of jaw" and a tingling sensation in both hands. Dr. Verdon documented that she had full strength in all extremities and muscle groups tested. Dr. Verdon cleared Ezerski to lift up to 50 pounds and remove the cervical collar (except while in a motor vehicle), and noted she has "returned to more normal level of activities in the community." (Doc. No. 40-1, PageID 685-86).

On February 26, 2015, Ezerski saw her family physician Dr. Lauricella, complaining of a sore right elbow as her "chief complaint," which Dr. Lauricella diagnosed as tennis elbow ("epicondylitis") and treated with anti-inflammatories. (Doc. No. 40-1, PageID 643-44). Ezerski's musculoskeletal exam was normal including "normal range of motion" of her neck and shoulders "and no tenderness" other than in her right elbow. (Doc. No. 40-1, PageID 643). Dr. Lauricella observed that Ezerski displayed "a marked increase in dysphoric mood depression" triggered by the recent death of her sister, for which he prescribed an antidepressant (Cymbalta). (Doc. No. 40-1, PageID 643).

On March 12, 2015, Ezerski returned to Dr. Verdon for further examination of her cervical spine. Dr. Verdon noted that Ezerski experienced "choking episodes which she stated was precipitated by her sister's untimely death," as well as lower back pain, neck pain, limited range of motion in her neck when looking to the left, and tingling in both hands. (Doc. No. 40-4, PageID 1252). On physical examination, Ezerski had full strength in her legs and hands, normal sensation and reflexes, and normal motor coordination. (Doc. No. 40-4, PageID 1252-53). Dr. Verdon noted she had local tenderness in the muscles of her sacroiliac spine ("PSIS") and a

positive Faber test on the left suggestive of sacroiliitis.[3] (Doc. No. 40-4, PageID 1252). Dr. Verdon obtained a cervical spine x-ray, which showed "Anterior fusion of the cervical spine, with good alignment." (Doc. No. 40-4, PageID 1288).

On April 7, 2015, Ezerski returned to Dr. Lauricella for treatment of her right elbow with a localized steroidal injection. During the examination, Ezerski's sole complaint was right elbow pain. Dr. Lauricella reported that Ezerski had no back pain or joint pain ("Negative for back pain and arthralgias"), normal range of motion of her neck, normal musculoskeletal exam, and normal range of motion in her right elbow. (Doc. No. 40-5, PageID 1413-15).

On April 20, 2015, the Social Security Administration denied Ezerski's disability claim, finding that the medical evidence failed to demonstrate she was disabled from working in any occupation under the Social Security Administration's standards. (Doc. No. 40-3, PageID 1132).

Northwestern learned through social media (Facebook) that in November 2014, Ezerski traveled to South Carolina for vacation, visited the beach, and was pictured without a cane and carrying a handbag. In August 2014, she was photographed holding her 1-year old granddaughter (the average weight of a 1-year old in the U.S. is 20 pounds).[4] She visited the Columbus Zoo in June 2014, a trip that requires prolonged walking. In April 2014, she posted about working in the yard and working on her tri-level house, and going for a walk with her granddaughter. (Doc. No. 40-3, PageID 992-1002).

Northwestern consulted Dr. Shih, who evaluated all the medical evidence including the records of Ezerski's post-fusion recovery. In his Physician Consultant Report dated April 15,

---

[3] The Faber or "Patrick's" test identifies the source of hip pain. The patient lies supine and raises one leg across the other leg at a 45 degree angle, and the examiner applies pressure to the raised leg. A positive pain response suggests sacroiliitis, an inflammation of the muscles of the sacroiliac. *Farlex Partner Medical Dictionary* (2012); http: //medical-dictionary.thefreedictionary.com/FABER+test

[4] See http://www.livestrong.com/article/233730-what-is-the-average-weight-height-for-toddlers/

2015, Dr. Shih noted that Ezerski was "cleared for 50-pound lifting" by Dr. Verdon as of January 29, 2015, and that she subsequently complained of right elbow pain, lower back pain, and depression, but with essentially normal musculoskeletal and neurological exams. Based on the clinical findings and objective tests, Dr. Shih opined that Ezerski was capable of sedentary level work activities: "I would expect now she is capable of sedentary work activities on a full-time basis with 10 pounds occasional level lifting, carrying, pushing, and pulling, with frequent sitting, standing, and walking, and ultimately may improve to a potential light-level capacity." (Doc. No. 40-1, PageID 633).

On April 24, 2015, Northwestern informed Ezerski of its determination to decline her disability claim under the Any Occupation Definition of Disability, and that benefits would terminate effective June 22, 2015, at the end of the Own Occupation Period. (Doc. No. 40-3, PageID 1039-42). Northwestern's determination was supported by the clinical findings of Drs. Verdon and Lauricella, objective radiographic images, the medical opinions of Dr. Shih, and the Transferable Skills Assessment, and was consistent with the Social Security Administration's determination.

**Ezerski's Administrative Appeal**

After receiving Northwestern's determination letter, on April 27, 2015 Ezerski called Northwestern and relayed that she had "things" that were "nowhere" in her medical records. She claimed she could not use her hands, turn her head, walk, or drive. (Doc. No. 40-3, PageID 1038). Ezerski's statements, however, are refuted by her contemporaneous medical records, which establish that she had full range of motion in all extremities, full range of motion in her cervical spine, and she was cleared by her surgeon to lift up to 50 pounds.

On October 7, 2015, Ezerski, through her attorney, appealed Northwestern's determination. (Doc. No. 40-4, PageID 1216-22). With her appeal, Ezerski submitted a FCE administered on June 15, 2015 by attorney-retained physical therapist Rick Wickstrom, DPT, a Vocational Report by Mark Pinti dated September 2, 2015, and updated medical records. (Doc. No. 40-4, PageID 1223).

Physical therapist Wickstrom concluded that Ezerski was "extremely debilitated" from any type of work. He described Ezerski as "generally overwhelmed by chronic pain affecting primarily her neck, head, and back" and stated she has "severe loss of neck active range-of-motion," "moderate loss of lumbar spine mobility," and decreased sensation in her left foot and right thumb. (Doc. No. 40-4, PageID 1242). He opined that Ezerski can frequently lift only 1 pound, carry only 5 pounds for short distances, and possessed "very low" physical ability for "ambulation agility," finger and hand dexterity, and keyboarding. He opined that Ezerski can sit, stand, and walk up to 2 hours during the work day. (Doc. No. 40-4, PageID 1242).

Despite these extreme FCE findings, Mr. Wickstrom emphasized that Ezerski's "problems reported and related physical limitations demonstrated were *only partly* substantiated by objective findings." (Doc. No. 40-4, PageID 1239) (emphasis added). He explained he had "performance concerns" regarding Ezerski's testing efforts, including "Unusual or inconsistent symptoms," "Superficial or non-anatomic tenderness," "Inconsistent weakness or strength," and "Unusual behaviors or overreaction." (Doc. No. 40-4, PageID 1239). Notably, Mr. Wickstrom listed Ezerski's "Work Goal" as "Permanent total disability."[5] (Doc. No. 40-4, PageID 1242).

---

[5] During the FCE, Ezerski described her typical day as sleeping until 9:00 or 9:30, watching the Today show with her feet up, chatting with her neighbors, watching movies with her husband who also collects disability benefits, and doing laundry and household chores. Ezerski stated she lives in a three-story house, yet she never complained of any difficulties navigating the stairs in her tri-level home. (Doc. No. 40-4, PageID 1229, 1239).

Mr. Wickstrom concluded, on a one-page FCE Summary, that Ezerski's "poor physical performance was likely impacted by co-existing mental health conditions" that were not the "primary focus" of his FCE. He recommended that Ezerski's mental health issues should be the "first priority" rather than her physical complaints. (Doc. No. 40-4, PageID 1242).

The one-page FCE Summary contained a space for Dr. Lauricella's signature (if he agreed with the conclusion), but Dr. Lauricella never signed the FCE Summary. (Doc. No. 40-4, PageID 1242). Given Dr. Lauricella's non-endorsement, the FCE Summary was reprinted with a space for Dr. Verdon's signature, which Dr. Verdon signed on October 1, 2015, showing his agreement that Ezerski's mental health should be the treatment priority. (Doc. No. 40-4, PageID 1244).

With the administrative appeal, Ezerski's attorney submitted a Vocational Report by Mark Pinti, stating the inexplicable barebones conclusion that Ezerski, a former store manager, possessed no transferable work skills. Mr. Pinti failed to provide any evaluation of Ezerski's education, employment background, or skills. (Doc. No. 40-5, PageID 1437-39).

Ezerski's attorney also submitted updated medical records from Drs. Verdon and Lauricella, an MRI of the lumbar spine taken on May 1, 2015, and an electromyogram/nerve conduction study ("EMG/NCV") conducted by physiatrist Pani Akuthota, M.D. on June 3, 2015.

The MRI showed "No evidence of lumbar disc herniation or nerve root impingement," and only "mild" lumbar disc desiccation and bulging and "mild" facet arthropay consistent with Ezerski's age. (Doc. No. 40-4, PageID 1361-62).

The EMG was negative for lumbar radiculopathy, establishing the absence of any irritation or entrapment of the spinal nerve root. Dr. Akuthota opined, "There is no EMG evidence of lumbar radiculopathy," "There is no evidence of lumbosacral plexopathy," and "There is no evidence of

myopathy or motor neuron disease on today's examination." (Doc. No. 40-4, PageID 1364). The NCV was normal except for mildly diminished amplitude of the sural and superficial peroneal nerve (located in the calf muscle), which Dr. Akuthota opined was only "suggestive" of a "possible borderline sensory neuropathy." (Doc. No. 40-4, PageID 1364). Dr. Akuthota's physical exam of Ezerski was completely normal. He reported that Ezerski "walks in with normal gait patterns," "Heel and toe walking revealed no weakness," "Straight leg raise is negative," "Both knee and ankle jerks are symmetrical bilaterally," "Normal strength in both lower extremities" "Sensory intact both lower extremities," and "No pathological toe signal noted." (Doc. No. 40-4, PageID 1364).

Dr. Lauricella examined Ezerski on June 10, 2015 and July 24, 2015 with normal findings. At each examination, Ezerski complained of back pain, generalized joint pain (arthralgias), weakness, numbness, and gait problems. (Doc. No. 40-4, PageID 1313-14, 1319). But Dr. Lauricella determined, based on his physical examination, that Ezerski had "Normal range of motion," "normal strength," "no atrophy or tremor," "No sensory deficit," "Gait normal," and "normal muscle tone." (Doc. No. 40-4, PageID 1314, 1319).

Dr. Verdon examined Ezerski on June 11, 2015 with essentially normal findings. Importantly, Dr. Verdon performed detailed strength tests for each area of the lumbar, thoracic, and cervical spine, specifically, L2 through L5, S1, C5 through C8, and T1. Dr. Verdon reported that Ezerski had full strength (5/5) in each area tested. Ezerski had normal range of motion and normal flexion, extension, bending, and rotation of the cervical, thoracic, and lumbar spine. (Doc. No. 40-4, PageID 1250-51). Ezerski had normal motor strength in all muscles tested, including the deltoids, wrists, triceps, hip flexion, knee extension, and dorsiflexion. (Doc. No. 40-4, PageID 1250). Ezerski had normal gait, normal station, normal tandem gate, and normal

heel-to-toe walking. (Doc. No. 40-4, PageID 1250). Dr. Verdon further noted, "patient walks without an assistive device." (Doc. No. 40-4, PageID 1250). The only positive test was the Faber test for sacroiliitis.

Despite the substantially normal clinical exam, Ezerski placed herself in the category of "crippled" based on the Oswestry Disability Index, which is a questionnaire in which the patient self-rates her perceived functional ability.[6] (Doc. No. 40-4, PageID 1250-52; Doc. No. 40-1, PageID 571).

**Northwestern's Determination of Ezerski's Administrative Appeal**

Northwestern consulted Shirley B. Ingram, M.D., a physician board certified in internal medicine and rheumatology, who evaluated all the evidence in the administrative record. (Doc. No. 40-1, PageID 578-81). Dr. Ingram noted that Mr. Wickstrom's FCE conflicted with neurosurgeon Dr. Verdon's clinical findings just four days before the FCE:

> This FCE contrasts with the office visit to Dr. Verdon on June 11, 2015. Gait is normal. She has no antalgia. She can tandem walk and heel-to-toe walk intact. Her strength is 5/5 out of all major groups. She has no scoliosis. She has no tenderness. Her range of motion of the cervical, thoracic, and lumbar spine is normal. She has normal flexion and side bend.

(Doc. No. 40-1, PageID 570). Specifically, Mr. Wickstrom's assessment that Ezerski was "overwhelmed by chronic pain" and "severe loss of active range of motion in her neck" directly conflicts with Dr. Verdon's medical findings that Ezerski had normal strength, no tenderness, and full range of motion in her cervical and lumbar spine:

> The physical therapist's conclusion that she had limited range of motion of the neck is contradicted by the almost normal range of motion of lateral rotation, and only moderate decreased flexion and near full extension. There is no rationale for this discrepancy and his recommendations.

---

[6] The Oswestry Disability Index is a "[p]atient-completed questionnaire which gives a subjective percentage score of level of function (disability) in activities of daily living in those rehabilitating from low back pain." www.physio-pedia.com/Oswestry_Disability_Index

(Doc. No. 40-1, PageID 570). Dr. Ingram opined, "The contrast between the surgeon's exam and then the FCE four days later highlights that the FCE is inconsistent and shows less than maximum and appropriate effort by Ms. Ezerski." (Doc. No. 40-1, PageID 570).

Dr. Ingram explained that the FCE contained numerous discrepancies that had no rational medical explanation. For example, Ezerski registered a grip strength of 14 pounds in "position two," but when the same test was repeated later in the FCE, Ezerski registered a normal grip strength in "position two" of 43 pounds. (Doc. No. 40-1, PageID 569). Dr. Ingram opined that the disparity in Ezerski's grip strength reflected a "marked inconsistency" in her FCE performance:

> Grip strength is low with the right 20 pounds on try one and 14 pounds on try two in grip strength position two; however, when the 5-position grip strength is done on position two, the right side is within normal limits at 43 pounds, and left side is within normal limits at 33 pounds (this is a marked inconsistency).

(Doc. No. 40-1, PageID 569). Similarly, Ezerski demonstrated significant disparity in the push/pull strength tests, which physiologically should have been equivalent. Yet she displayed significant strength variance in these equivalent tests:

> Push/pull strength horizontal was 27 pounds for the right, 23 pounds for the left, and the horizontal pull was 12 pounds for the right and 12 pounds for the left. The physiologic expectation is that push pull strength is equivalent.

(Doc. No. 40-1, PageID 569).

Dr. Ingram noted that Ezerski's minimal heart rate increase during exertion and speed tests were inconsistent with her complaints of severe pain and reflected sub-maximum effort. During the step test, Ezerski's heartrate only increased from 72 bpm to 90 bpm, which Dr. Ingram opined evidenced "that maximum effort was not given, and this is not consistent with increased pain, which had been reported." (Doc. No. 40-1, PageID 569). Ezerski complained of pain and

that she "couldn't keep up" even though her heart rate had minimally increased to 80 bpm. (Doc. No. 40-4, PageID 1237).

Ezerski's performance on the keyboarding speed test was rated "very low" due to her stated inability to concentrate. (Doc. No. 40-4, PageID 1234). But as Dr. Ingram astutely noted, "There is no observation by her physicians that she has any limitations in cognition." (Doc. No. 40-1, PageID 576). Dr. Ingram opined, "Ms. Ezerski's complaints on her physical therapy FCE are extreme compared to the minimal changes noted on physical exam by her multiple physicians over the past 2-3 years. It is difficult to explain these discrepancies except to state that there is less than full compliance with the exam, which undermines her credibility." (Doc. No. 40-1, PageID 574-75). Dr. Ingram opined, "Please note that there is no physiologic explanation for her slowness on her exams. The FCE is invalidated by significant inconsistencies, +Waddell's sign, lack of increased heart rate, noted by PT Wickstrom on her FCE."[7] (Doc. No. 40-1, PageID 575).

Dr. Ingram concluded, "The records do not support that after reasonable recovery time from her 3-level cervical fusion without complications, that she has limitations for full time sedentary level work after June 22, 2015." (Doc. No. 40-1, PageID 575). Dr. Ingram opined that Ezerski had the following reasonable functional limitations, which would not preclude sedentary level work:

> It is reasonable that [Ezerski] is limited to no more than one-third of her day standing and walking and she is restricted from kneeling and crawling and restricted from overhead work. There is no limitation for lifting, carrying, or pushing/pulling up to 10 pounds occasionally. There are no limitations for sitting up to 8 hours per workday with reasonable breaks. There is no limitation for frequent handling or fingering.

---

[7] A positive Waddell's sign indicates a non-organic or psychological cause for pain. See *Minor v. Comm'r of Soc. Sec.*, 513 Fed.Appx. 417, 422 n.15 (6th Cir. 2013).

(Doc. No. 40-1, PageID 575).

On October 27, 2015, Dr. Ingram spoke with Dr. Verdon, who relayed that Ezerski's request for disability "came out of left field." (Doc. No. 40-1, PageID 563). When informed of the inconsistencies in the FCE, Dr. Verdon "assess[ed] that [the] probable explanation is that she was giving less than full effort." (Doc. No. 40-1, PageID 563, 562). Dr. Verdon confirmed that he "cannot provide objective evaluation" of Ezerski's performance on the FCE, and confirmed "she has no difficulty walking"[8] (Doc. No. 40-1, PageID 563).

On January 7, 2016, Northwestern upheld its determination that Ezerski failed to satisfy the Group Policy's Any Occupation Definition of Disability. (Doc. No. 40-3, PageID 975-89).

## ARGUMENT

### I. *De Novo* Standard Of Judicial Review.

The parties have stipulated to application of the *de novo* standard of judicial review. "In the ERISA context, the role of the reviewing federal court is to determine whether the administrator or fiduciary made a correct decision, applying a *de novo* standard." *Perry v. Simplicity Eng'g*, 900 F.2d 963, 966 (6th Cir. 1990). The *de novo* standard applies to both legal and factual determinations. *Gilewski v. Provident Life & Acc. Ins. Co.*, No. 1:15-CV-238, 2016 WL 3355555, at *3 (W.D. Mich. June 17, 2016), *aff'd*, 683 Fed.Appx. 399 (6th Cir. 2017) (citing *Rowan v. Unum Life Ins. Co. of Am.*, 119 F.3d 433, 435 (6th Cir. 1997)). "When conducting a *de novo* review, the district court must take a 'fresh look' at the administrative record but may not consider new evidence or look beyond the record that was before the plan administrator." *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 616 (6th Cir. 1998) (citations omitted).

---

[8] Dr. Ingram summarized the telephone call in a letter to Dr. Verdon. Dr. Verdon signed and returned the letter on November 24, 2015, verifying that he reviewed the summary of the conversation and had no changes. (Doc. No. 40-1, PageID 563, 562).

## II. Northwestern Correctly Determined That Ezerski Failed To Prove She Was Disabled From All Occupations.

The Group Policy places the burden of proving disability and entitlement to benefits on the plan participant. *Rose v. Hartford Fin. Servs. Group, Inc.*, 268 Fed. Appx. 444, 452 (6th Cir. 2008); *Leppert v. Liberty Life Assur. Co. of Boston*, 2:14-cv-1207, 2016 WL 1161957, at *5 (S.D. Ohio Mar. 24, 2016), *aff'd*, 661 Fed.Appx. 425 (6th Cir. 2016) (holding "it was plaintiff's burden under the policy to prove that he was unable to perform the duties of 'any occupation'").

The participant must satisfy her burden of proof with clinical findings and objective evidence that medically establish ongoing work-precluding functional deficits. "ERISA plans would be open to fraudulent abuse if all that was needed to prevail and receive benefits was a claimant's subjective statement that she cannot work." *White v. Standard Ins. Co.*, 895 F.Supp.2d 817, 848 (E.D. Mich. 2012), *aff'd*, 529 Fed.Appx. 547 (6th Cir. 2013).

When Ezerski initially submitted her disability claim to Northwestern in June 2013, she claimed to be unable to work as a retail store manager, including prolonged standing, lifting merchandise, restocking shelves, sweeping the floor, and counting money. No physician opined she was unable to perform sedentary level work duties. Northwestern approved her disability claim under the Own Occupation Definition of Disability, because her cervical radiculopathy reasonably prevented her from performing the light level duties of a retail store manager.

When Ezerski sought to obtain benefits beyond 24 months under the Any Occupation Definition of Disability, she claimed to be unable to walk, turn her head, or use her hands. She contends that the FCE by physical therapist Wickstrom on June 15, 2015 is objective evidence that she cannot perform even sedentary level work. During the FCE, Mr. Wickstrom noted that Ezerski demonstrated "severe loss of neck active range-of-motion," "abnormal" lumbar flexion

and extension, and she was unable to walk on her heels or toes due to unsteadiness. (Doc. No. 40-4, PageID 1242, 1231).

But the FCE conflicts with the detailed contemporaneous clinical findings of Drs. Verdon, Lauricella, and Akuthota, and thus was not a reliable measure of Ezerski's functional abilities. Four days before the FCE, on June 11, 2015, Dr. Verdon examined Ezerski and documented that she had normal strength in every muscle group of the lumbar, thoracic, and cervical spine (L2 through L5, S1, C5 through C8, and T1). (Doc. No. 40-4, PageID 1250-51). Dr. Verdon specifically reported that Ezerski had normal range of motion of the cervical, thoracic, and lumbar spine on flexion, extension, side bending, and rotation, and "heel-to-toe walking were intact." (Doc. No. 40-4, PageID 1250-51).

Dr. Lauricella examined Ezerski on June 10, 2015 and July 24, 2015 with completely normal findings, including "Gait normal," "Normal range of motion," "normal strength," "no atrophy or tremor," "No sensory deficit" and "normal muscle tone." (Doc. No. 40-4, PageID 1314, 1319).

Physiatrist Dr. Akuthota examined Ezerski on June 3, 2015 and reported that she "walks in with normal gait patterns," "Heel and toe walking revealed no weakness," "Straight leg raise is negative," "Both knee and ankle jerks are symmetrical bilaterally," "Normal strength in both lower extremities" "Sensory intact both lower extremities," and "No pathological toe signal noted." (Doc. No. 40-4, PageID 1364).

The medical findings of Dr. Verdon, Dr. Lauricella, and Dr. Akuthota establish that Mr. Wickstrom's FCE was not a reliable measure of Ezerski's true functional capacities. (Doc. No. 40-4, PageID 1231, 1242).

Mr. Wickstrom's FCE not only is inconsistent with the clinical findings of Ezerski's treating physicians, but actually documents its unreliability. Mr. Wickstrom identified numerous FCE

performance concerns, including "Unusual or inconsistent symptoms" "Superficial or non-anatomic tenderness", "Inconsistent weakness or strength," and "Unusual behaviors or overreaction." (Doc. No. 40-4, PageID 1239).

The FCE included 22 physical tasks that contain validity measures. Mr. Wickstrom scored Ezerski's performance as "Inconsistent" or "Maybe Inconsistent" in 19 of the 22 physical tasks. The only test in which Ezerski's performance was not deemed inconsistent, and in which she scored below average, was the keyboard speed typing test during which she complained "It is hard to concentrate." (Doc. No. 40-4, PageID 1234). But Dr. Verdon's neurological examination four days earlier established that Ezerski's concentration, memory, attention span, and fund of knowledge were "all within normal limits." (Doc. No. 40-4, PageID 1250). Ezerski's professed inability to pass the speed typing test due to concentration difficulties is refuted by Dr. Verdon's neurological exam findings on June 11, 2015.

Courts have criticized reliance on FCE findings that are inconsistent with the weight of the medical evidence and the treating physician's clinical findings. See *White v. Eaton Corp. Short Term Disability Plan*, 308 Fed.Appx. 713, 718 (4th Cir. 2009). Yet that is precisely the arbitrary posture Ezerski adopts in this lawsuit. Ezerski claims to be unable to work in "all occupations" based on an internally inconsistent FCE that conflicts with all the medical evidence in the administrative record, including the clinical findings of Drs. Verdon, Lauricella, and Akuthota, and the medical opinions of Drs. Ingram and Shih.

Northwestern weighed all the evidence and correctly determined that the objective tests and clinical findings of Drs. Verdon, Lauricella, Akuthota, Ingram and Shih outweigh the inconsistent and unreliable FCE that was completely contrary to all the medical evidence. Ezerski failed to satisfy her burden of proving she was disabled from "all occupations" based on

(i) the contemporaneous medical records of Drs. Verdon, Lauricella, and Akuthota, which establish that Ezerski had normal strength, full range of motion, and no limitation that would preclude her from performing sedentary work, (ii) MRI and EMG/NCV tests which objectively establish that Ezerski did not have cervical or lumbar radiculopathy as of June 23, 2015, (iii) the medical opinions of Dr. Ingram and Dr. Shih, (iv) the Transferable Skills Assessment identifying numerous sedentary occupations that Ezerski has the education, training, and ability to perform, and (v) significant evidence that Ezerski's performance on the FCE was not a reliable measure of her functional capacities.

## CONCLUSION

Northwestern's determination that Ezerski failed to satisfy the Any Occupation Definition of Disability is supported by the clinical findings of Ezerski's treating physicians, the medical opinions of two independent consulting physicians, and evidence that Ezerski's performance on the FCE was inconsistent, exaggerated, and unreliable. Accordingly, Northwestern's determination was correct and should be upheld. Judgment should be entered in favor of Northwestern including an award of costs and reasonable attorneys' fees pursuant to 29 U.S.C. §1132(g) and the Federal Rules of Civil Procedure.

Respectfully submitted,

By: *<u>/s/ Warren von Schleicher</u>*
Attorney for Defendant,
Northwestern Mutual Life Insurance Company

Warren von Schleicher (IL- 6197189)
SMITH | VON SCHLEICHER + ASSOCIATES
180 N. LaSalle St. Suite 3130
Chicago, Illinois 60601
P 312.541.0300 | F 312.541.0933
warren.vonschleicher@svs-law.com

**CERTIFICATE OF SERVICE**

I hereby certify that on August 30, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorney of record listed below:

Joseph P. McDonald
McDonald & McDonald Co., L.P.A.
200A East Spring Valley Rd.
Dayton, OH 45458
joseph@mcdonaldandmcdonald.com

Brett K. Bacon
Frantz Ward LLP
200 Public Square, Suite 3000
Cleveland, Ohio 44114
bbacon@frantzward.com

*/s/ Warren von Schleicher*
SMITH | VON SCHLEICHER + ASSOCIATES
180 N. LaSalle Street Suite 3130
Chicago, Illinois 60601
P 312.541.0300 | F 312.541.0933
warren.vonschleicher@svs-law.com